Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS, PLLC
2315 McDonald Avenue, Suite 210
Missoula, MT 59801
Telephone (406) 203-1730
Telefax (406) 205-3170
chuck@hjbusinesslaw.com
jenny@hjbusinesslaw.com

-and-

Sheila R. Schwager
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208-954-5209
Email: sschwager@hawleytroxell.com
*Pro Hac Vice*

Attorneys for Defendant First Interstate Bank

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| JERRY HALL and JAN HALL, | Case No. 2:15-bk-60979-WLH |
| Plaintiffs, | Adv. Proc. No. 2:22-ap-02009-WLH |
| v. | |
| FIRST INTERSTATE BANK, a Montana banking corporation and DOES 1-10, | FIRST INTERSTATE BANK'S OPPOSITION MEMORANDUM TO PLAINTIFFS' BRIEF |
| Defendants. | |

# TABLE OF CONTENTS

                                                                       **Page**

I. ALL OF THE PLAINTIFFS' CLAIMS ARE BARRED BY THE 2016 SETTLEMENT ORDER. ........................................................................................... 1

    A. The Plaintiffs Fail to Submit Any Evidentiary Facts to Support a Ruling In Their Favor. ................................................................................................ 1

    B. Due to the Derivative, Non-Particularized Claims, the Plaintiffs Are Bound by the Release Granted to FIB by the Trustee. ......................................... 2

    C. The Plaintiffs Are Expressly Bound By the Terms of the Release Incorporated in the 2016 Settlement Order. ............................................................ 6

    D. The Broad Release At Issue In This Case Is Enforceable Under Montana Law. ......................................................................................................... 7

II. CONCLUSION ................................................................................................... 9

44833.0274.15489950.2

# TABLE OF AUTHORITIES

Page

**CASES**

*Aiken v. Interglobal Mergers & Acquisitions,*
2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) ................................................................. 6

*Barber v. Remington Arms Co.,*
2013 WL 496202 ..................................................................................................................... 8

*Caplin v. Marine Midland Grace Trust Co., of NY,*
406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) ......................................................... 4, 5

*CarrAmerica Realty Corp., v. Nvidia Corp.,*
302 Fed.Appx. 514 (9th Cir. 2008) ......................................................................................... 5

*Farina v. Mt. Bachelor, Inc.*
66 F.3d 233 (9th Cir. 1995) ..................................................................................................... 7

*First Nat'l Bank in Harvey v. Colonial Bank,*
898 F. Supp. 1220 (N.D.Ill. 1995) .......................................................................................... 6

*Foster v. First Interstate Bank, (In re Shoot the Moon, LLC),*
635 B.R. 568 (Bankr. Mont. 2022) ..................................................................................... 7, 9

*Foster v. First Interstate Bank, (In re Shoot the Moon, LLC),*
642 B.R. 21 (Bankr. Mont. 2022) ........................................................................................... 7

*Graham-Rogers v. Wells Fargo Bank, N.A.,*
397 Mont. 262, 449 P.3d 798 (Mont. 2019) .......................................................................... 6

*Hanson v. Oljar,*
752 P.2d 187 ............................................................................................................................ 9

*Hetherington v. Ford Motor Co.,*
849 P.2d 1039 .......................................................................................................................... 9

*Hohensee v. Chemodurow,*
470 P.2d 965 (Mont. 1970) ..................................................................................................... 8

*In re Senior Cottages of America, LLC,*
482 F.3d 997 (8th Cir. 2007) ................................................................................................... 5

*Kamal v. Baker, Tilly U.S., LLP,*
2022 WL 1050053 *9 (D. Minn. 4/7/22) ............................................................................... 4

*Kesselman v. Nat'l Bank of Ariz.,*
937 P.2d 341 (Az. App. 1997) ................................................................................................ 6

*Kruzich v. Old Republic Ins. Co.,*
344 Mont 126, 188 P.3d 983 (Mont. 2008) ........................................................................... 8

*Lachenmaier v. First Bank Systems, Inc.,*
246 Mont. 26, 803 P.2d 614 ................................................................................................... 5

*Marshall v. Picard*,
   740 F.3d 81 (2nd Cir. 2014) ............................................................................................ 2

*Miller v. State Farm Mut. Auto. Ins. Co.*,
   155 P.3d 1278 (Mont. 2007) ........................................................................................... 8

*Murphy*,
   270 P.3d at 74 ................................................................................................................. 9

*Picard v. J.P. Morgan Chase and Co.*,
   460 B.R. 84 (S.D.N.Y. 2011) ....................................................................................... 4, 5

*Rich v. Ellingson*,
   174 P.3d 491 (Mont. 2007) ............................................................................................. 8

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, (*In re Bernard L. Madoff*), 568 B.R. 203 (Bankr. S.D.N.Y. 2017) ................................................... 3

*Skilstaf, Inc.*,
   669 F.3d at 1017 ............................................................................................................. 9

*Smith v. Arthur Anderson, LLP*,
   421 F.3d 989 (9th Cir. 2005) ....................................................................................... 3, 4

## **RULES**

Fed. Bank. R. 7056 ................................................................................................................ 1

Fed. R. Civ. P. 56 .................................................................................................................. 1

Local Bankruptcy Rule 7056-1 .............................................................................................. 1

44833.0274.15489950.2

First Interstate Bank ("**FIB**") files this Opposition Memorandum to Plaintiffs' Brief, filed on January 31, 2023, as Docket No. 28 ("**Plaintiffs' Motion**"), in the above captioned adversary proceeding.

I. **ALL OF THE PLAINTIFFS' CLAIMS ARE BARRED BY THE 2016 SETTLEMENT ORDER.**

With no evidentiary support, the Plaintiffs argue that their Complaint filed against FIB is not barred by the 2016 Settlement Order.[1] Their conclusory assertions include 1) that the trustee cannot release their asserted claims; 2) they were not parties to the Release that is incorporated in that order and nothing in the agreement operates to release any of the Plaintiffs' claims against FIB; and 3) that the Release is against public policy because its scope releases claims that exceed negligence claims. Plaintiffs' arguments fail as a matter of law.

A. **The Plaintiffs Fail to Submit Any Evidentiary Facts to Support a Ruling In Their Favor.**

The Plaintiffs request that this Court determine, as a matter of law, that they are not barred under the 2016 Settlement Order from bringing their Complaint against FIB. Yet the Plaintiffs fail to provide any evidentiary support, contrary to Federal Bankruptcy Rule 7056. Rule 56(c)(1)(A), incorporated by Rule 7056, requires that a party cite to particular parts of materials in the record in support of the dispositive motion. FED. BANK. R. 7056. Further, Local Bankruptcy Rule 7056-1(a)(1) requires that the moving party provide a separate, short, and concise Statement of Uncontroverted Facts, and states that failure to submit that statement provides grounds for a denial of the motion. L.B.R. 7056-1.

The Plaintiffs failed to file any declaration or cite to any evidence to support the allegations made in their Motion, despite the necessity to demonstrate that the claims they are asserting are not derivative claims of the Debtor's Estate. That failure is fatal to a dispositive motion. In any

---

[1] The "**2016 Settlement Order**" is defined as that certain Order Authorizing and Approving (1) Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Interests, and Granting Related Relief; (2) Stipulation and Settlement Motion for Approval of Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Interests; (3) Stipulation with the Unsecured Creditor's Committee; and (4) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and Granting Related Relief, entered on September 26, 2016, as Dkt. No. 838.

event, the allegations that were made are insufficient as a matter of law to convert the derivative claims that were released by the Trustee into non-derivative claims. Accordingly, judgment should be entered against the Plaintiffs.

### B. Due to the Derivative, Non-Particularized Claims, the Plaintiffs Are Bound by the Release Granted to FIB by the Trustee.

As set forth in FIB's Memorandum in Support of Motion for Summary Judgment filed on January 31, 2023, as Docket No. 30 ("**FIB Memorandum**"), a creditor can only bring non-derivative, particularized claims against a third party. *See* FIB Memorandum, pp. 11-28[2]. Derivative claims are exclusive to the Trustee, and creditors of the debtor are divested of any power to bring those claims. *Id.* pp. 11-12. Thus, the creditors are bound by the outcome of the Trustee's action, which in this case was a release of all known and unknown claims, in exchange for a "major concession" by FIB and other secured creditors to release secured proceeds for the benefit of the Estate and allow for a payment priority to unsecured claims, such as those of the Plaintiffs.[3]

In order for a creditor to establish that a claim is non-derivative and particularized, the creditor must show that the third party took direct action that *was particularly aimed at the creditor*. *See* FIB Memorandum, pp. 15-23. As set forth in *In re Barnard L. Madoff Invs. Sec. LLC*, in finding that the claims were derivative, the court noted that the complaints failed to allege *that the defendants took any action particularly aimed at the customers*. *Marshall v. Picard (In re Barnard L. Madoff Invs. Sec. LLC)*, 740 F.3d 81, 93 (2nd Cir. 2014). The court further noted there was no allegation that the defendants *made misrepresentations to the customers*, or similar conduct, and the alleged injuries were based upon an injury to the estate, specifically, the defendants' fraudulent withdrawals were *from the debtor's own accounts*, which happened to consist of customers' funds. *Id.* at 92. Indeed, the Court held that the plaintiffs' "allegations that the [] defendants *knowingly reaped the benefits* of Madoff's scheme through fraudulent

---

[2] The referenced pages to the FIB Memorandum are the brief's page numbers, rather than the ECF page numbers.

[3] FIB's Statement of Uncontroverted Facts filed as Docket No. 31 ("**Undisputed Facts**"), ¶¶ 2-8, 13.

withdrawals, and effected such withdrawals through backdating trades and recording fictional profits, does not amount to a particularized claim that they *directly participated* in defrauding [the debtor's] customers *by inducing them* to invest." *Id.* at 93 (emphasis supplied); *e.g. see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC, (In re Bernard L. Madoff)*, 568 B.R. 203 (Bankr. S.D.N.Y. 2017) ( "The prior pleadings failed, however to plead facts showing that Picower ever spoke with or sent misleading information to any member of the putative class, or directed [the debtor] or Madoff to create or send misleading information [to the plaintiffs]); *Fox v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, 531 B.R. 345, 353 (Bankr. S.D.N.Y. 2015) ("appellants have alleged no *particularized actions* . . . the purpose of this comparison is to make clear that any allegations purporting to show injury directly traceable to the Picower defendants' conduct are too conclusory to present a bona fide claim independent from Trustee's action."); *In re Tronox, Inc.*, 855 F.3d 84, 101 (2nd Cir. 2017) ("we were not persuaded by the fact that the plaintiffs alleged different causes of action than had the trustee. There, as here, the plaintiffs *did not allege that the defendants took any 'particularlized' action aimed at them.*") (emphasis supplied).

Despite the clear burden of establishing the claim is non-derivative, the record is wholly deficient of *any* particularized conduct FIB took towards Mr. or Mrs. Hall, that caused the damages Plaintiffs contend they suffered.[4] Indeed, the record is to the contrary.[5]

Further, a creditor must establish that the alleged damages are direct and not indirect and secondary to those asserted by the Trustee. *See* FIB Memorandum, pp. 23-26. This cannot be done when the allegations are in regard to the third party's conduct *with the Debtor*, rather than the creditor. *Id.* As set forth in FIB Memorandum and Undisputed Facts, the conduct alleged by the Plaintiffs concern certain *Debtor's accounts* held at FIB; *not* as to the Plaintiffs' accounts at FIB.[6] As stated by the Ninth Circuit in *Smith v. Arthur Anderson, LLP* "when [alleged] acts of mismanagement occur when the firm is insolvent, they operate to injure the firm *in the first*

---

[4] Undisputed Facts, ¶¶ 17-35.

[5] Undisputed Facts, ¶¶ 17-35.

[6] FIB Memorandum, pp. 23-26; Undisputed Facts, ¶ 34.

*instance by reducing its value*, injuring creditors only indirectly." 421 F.3d 989, 1004 (9th Cir. 2005) (emphasis supplied); *e.g. Kamal v. Baker, Tilly U.S., LLP*, 2022 WL 1050053 *9 (D. Minn. 4/7/22) (emphasis supplied) (plaintiffs "do not allege that Krieger *stole money directly* from the Noteholders. Rather they allege that Krieger misappropriated funds from [the debtor] and plaintiffs suffered losses when Krieger's theft left [the debtor] unable to repay their Notes. The *primary injury was to [the debtor]* and the plaintiff's injuries *derive* from the company's injuries.")

It cannot be ignored that the Plaintiffs in this case essentially duplicated the Trustee's allegations and claims in the Complaint[7] and that there is not a single allegation that FIB made misrepresentations or directed any other action *to* the Plaintiffs to induce them to issue loans to the Debtor. There is simply no particularized conduct or alleged direct damages sufficient to convert the Trustee's claims to a non-derivative claim; which is fatal to Plaintiffs' Complaint, due to the bar of the Release in the 2016 Settlement Order.

The only cases cited by the Plaintiffs in support of their Motion are *Caplin v. Marine Midland Grace Trust Co., of NY*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) and *Picard v. J.P. Morgan Chase and Co.*, 460 B.R. 84, 91-94 (S.D.N.Y. 2011). Yet, neither of those cases support the Plaintiffs' position because the plaintiff creditors in those cases *did meet* their burden of establishing the claims were non-derivative and particular to those creditors. As set forth in FIB's Memorandum, the 9th Circuit distinguished *Caplin* in *Smith v. Arthur Andersen LLP*, wherein the court explained that the key distinction between *Caplin* and *Smith* is that the Trustee in *Smith* was seeking to redress the injuries of the debtor due to the purported damage the third party caused the debtor by conduct that created deepening insolvency. *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1003 (9th Cir. 2005). If the harm to the corporation could have been averted if the corporation had been dissolved in a timely manner, rather than kept afloat with spurious debt, then the trustee was found to have validly asserted a claim on behalf of the debtor. *Id.* This was contrasted to the *Caplin* non-derivitive personal claims where the trustee was seeking to pursue claims of misconduct of third parties, on "behalf of the holders of the debtor's debentures". *Id.* at

---

[7] Undisputed Facts, ¶1.

1002. Those claims of the debenture holders were expressly governed by an elaborate statutory scheme, which did not give third parties standing to bring the claims on behalf of the debenture holders. *Caplin, supra.*, 406 U.S. at 428. Accordingly, those claims in *Caplin* were non-derivative, particularized claims; unlike the Plaintiffs' claims in this case.

*Picard v. J.P. Morgan Chase and Co.*, is likewise distinguishable because there was no dispute that the Trustee was attempting to bring claims that belonged to the customers and *not* the debtor[8]. *Picard v. J.P. Morgan Chase and Co.*, 460 B.R. 84, 95 (S.D.N.Y. 2011) ("there is no dispute to whom the common law claims belong—the Trustee acknowledges they are the customers' and not the debtors."). The *Picard* court affirmed that claims—like those advanced by the Plaintiffs—in which the creditor shares in an injury common to all creditors should be "deemed vested in the trustee, with exclusive standing to pursue them for the benefit of all creditors." *Id.* Unlike *Picard*, as set forth in FIB's Memorandum and the Undisputed Facts, the Plaintiffs are unable to point to any particularized conduct that could support an argument that their claims are non-derivative.

The Plaintiffs also make the conclusory statement, *with no legal authority cited in support*, that the Plaintiffs were customers of FIB and therefore FIB owed them some unspecified duty as to how the Bank addressed a different customer's bank account. As set forth in the legal authorities in FIB's Memorandum, merely being a customer of the bank does not create an actionable duty under Montana or federal law. *See* FIB Memorandum pp. 19-22. "[I]t is the law in Montana that the relationship between a bank and its customer is generally described as that of debtor and creditor and as such does not give rise to fiduciary responsibilities." *Lachenmaier v. First Bank Systems, Inc.*, 246 Mont. 26, 33, 803 P.2d 614, 618 (1990). Indeed, in granting summary judgment

---

[8] The Court in *Picard* also determined that the Trustee lacked standing to pursue the claims on behalf of the Debtor due to the equitable doctrine of *in pari delicto*, citing the *Wagoner* rule. Notably, the Ninth Circuit declined to follow the *Wagoner* rule in *CarrAmerica Realty Corp., v. Nvidia Corp* holding that the *in pari delicto* defense has nothing to do with a trustee's standing. 302 Fed.Appx. 514, 517 (9th Cir. 2008); *e.g. In re Senior Cottages of America, LLC, supra*, 482 F.3d 997, 1003 (8th Cir. 2007) (several circuits have held "an analysis of standing does not include an analysis of equitable defenses, such as *in pari delicto*. Whether a party has standing to bring claims and whether a party's claims are barred by an equitable defense are two separate questions, to be addressed on their own terms.")

to a bank, the Montana Supreme "Court has recognized that no fiduciary duty arises between a bank and its [customer] where the bank did not offer financial advice, its advice was not always heeded, or where the [customer] was advised by others, such as legal counsel." *Id.* at 33, 619; *e.g. Graham-Rogers v. Wells Fargo Bank, N.A.*, 397 Mont. 262, 271, 449 P.3d 798, 804 (Mont. 2019) (tort claims dismissed as a matter of law since the relationship between Wells Fargo and Graham-Rogers was one of bank and customer and did not give rise to a fiduciary duty; instead the parties relationship was governed by the terms of the written agreement); *e.g., Aiken v. Interglobal Mergers & Acquisitions*, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) ("[N]either the Bank Secrecy Act nor the Patriot Act affords a private right of action. This Court ***may not announce a duty of care where the [state] courts have declined to do so***; nor may this Court impose a duty of care based upon a statute that does not permit a private right of action."); *First Nat'l Bank in Harvey v. Colonial Bank*, 898 F. Supp. 1220, 1229 (N.D.Ill. 1995) (courts have concluded that a bank has no good faith obligation to disclose a suspected kite or to refrain from attempting to shift the kite loss); *Kesselman v. Nat'l Bank of Ariz.*, 937 P.2d 341 (Az. App. 1996) (bank did not owe a duty to private investors to take affirmative measure to avoid any loss to them caused by check kiting of bank's customer).

Accordingly, the claims are derivative and released.

### C. The Plaintiffs Are Expressly Bound By the Terms of the Release Incorporated in the 2016 Settlement Order.

The Plaintiffs assert that they are not parties to the Release and there is nothing in the agreement that was approved by the 2016 Settlement Order that would release their asserted claims against FIB. The undisputed facts are to the contrary, as set forth in FIB's Memorandum. *See* FIB Memorandum, pp. 9-13; Undisputed Facts, ¶¶ 1- 35.

To briefly summarize, the Complaint filed by the Plaintiffs substantively duplicates the Trustee's Third Amended Complaint, regarding claims that are based on allegations that occurred prior to September 26, 2016.[9] This Court dismissed the Trustee's Third Amended Complaint filed

---

[9] Undisputed Facts, ¶1.

against FIB, holding the Release barred the claims of the Trustee and neither the Release nor the 2016 Settlement Order could be collaterally attacked.[10] *See Foster v. First Interstate Bank, (In re Shoot the Moon, LLC)*, 635 B.R. 568 (Bankr. Mont. 2022); *Foster v. First Interstate Bank, (In re Shoot the Moon, LLC)*, 642 B.R. 21 (Bankr. Mont. 2022). The Release broadly released any and all derivative claims whatsoever of any and every character, now known or unknown, that arose prior to September 26, 2016.[11] *In re Shoot the Moon, LLC*, 635 B.R. at 575-581. The underlying conclusions and facts that the Plaintiffs allege in their Complaint to support their claims, arose prior to September 26, 2016.[12] The 2016 Settlement Order, incorporating the Release and the Stipulation entered into with the Unsecured Creditors Committee, *expressly provides that it is binding in all respects upon* the Debtor's Estate *and all Creditors of the Debtor*, Shoot the Moon.[13] The Plaintiffs are an unsecured creditor of the Debtor.[14] Thus, the 2016 Settlement Order does expressly release Plaintiffs' claims.

### D. The Broad Release At Issue In This Case Is Enforceable Under Montana Law.

The Plaintiffs cite a single federal case applying Oregon law to argue that the scope of the release which includes any and all causes of action of whatever kind or nature is against public policy and therefore void. First, this argument is barred in its entirety, as it is an improper collateral attack on the 2016 Settlement Order. *See In re Shoot the Moon, LLC*, 642 B.R. at 25-27.

Moreover, the case upon which Plaintiffs rely concerns an exculpatory clause in a ski pass—not a release in a settlement agreement. *Farina v. Mt. Bachelor, Inc.* 66 F.3d 233 (9th Cir. 1995). Citing *Farina* and acknowledging that the court was applying Oregon law, the Plaintiffs argue that a release which releases claims in excess of a negligence claim are void against public policy. Yet, the unique law applicable to exculpatory provisions that relieve a party of liability for

---

[10] Undisputed Facts, ¶11.

[11] Undisputed Facts, ¶¶ 3,6.

[12] Undisputed Facts, ¶ 12.

[13] Undisputed Facts, ¶¶ 2-7.

[14] Undisputed Facts, ¶¶ 8, 13, 14, 17.

future injury, is not applicable to releases in settlement agreements. *Kruzich v. Old Republic Ins. Co.*, 344 Mont 126, 138, 188 P.3d 983, 992 (Mont. 2008). "The public policy of [Montana] is to encourage settlement and avoid unnecessary litigation." *Id.* Indeed, Plaintiffs cannot cite to any Montana case that holds parties are prohibited from including releases in settlement agreements that release disputed claims of conduct in excess of ordinary negligence.

To the contrary, as one example, in *Rich v. Ellingson*, the Montana Supreme Court upheld a release that released a party from "any and all actions, claims, causes of action, demands, or expenses for damages or injuries, whether asserted or unasserted, known or unknown, foreseen or unforeseen." *Rich v. Ellingson*, 174 P.3d 491, 494, 496 (Mont. 2007). The court explained:

> From beginning to end, the Release consistently demonstrates the intent of the parties to resolve all disputes arising from Ellingson's representation of Rich, known or unknown, anticipated or unanticipated, ***regardless of the particular complaint alleged***. The sole reservation in the document was for Rich's claims against State Farm for bad faith; no reservations were made as to present or future claims against Ellingson. Rich's present allegation of her past intent, without more, cannot change the unambiguous intent of the Release, as indicated through its express terms. The District Court correctly concluded that the terms of the agreement and Release were clear and unambiguous and that Rich was bound by those terms.

*Id.* at 496 (emphasis supplied). "[T]he law favors the settlement of disputes out of court, either before or after an action is begun, and when the parties are shown to have made a valid settlement, they will be held thereto, in the absence of fraud or mistake." *Hohensee v. Chemodurow*, 470 P.2d 965, 967 (Mont. 1970); .*e.g. Miller v. State Farm Mut. Auto. Ins. Co.*, 155 P.3d 1278, 1281 (Mont. 2007) ("The reasons for encouraging settlement are numerous. Settlement eliminates cost, stress, and waste of judicial resources.")

In *Barber v. Remington Arms Co.*, 2013 WL 496202, at *6 (D. Mont. Feb. 11, 2013), *aff'd*, 604 F. App'x 630 (9th Cir. 2015), the Montana federal district court dismissed the complaint pursuant to Rule 12(b)(6), due to a full release set forth in a settlement agreement. The Court explained:

> Thus, the language of a release will be given effect to include all possible claims even if they are not specifically mentioned. *Hohensee*, 470 P.2d at 967. The

releasor's "latent discontent with the release cannot be grounds for alteration of an express agreement." *Hanson v. Oljar,* 752 P.2d 187, 189 (Mont.1988) (internal quotation marks and citation omitted). ***Here, the Barbers agreed to a broad, general release in 2002, and they did not reserve any claims***. *Murphy,* 270 P.3d at 74; *Hetherington v. Ford Motor Co.,* 849 P.2d 1039, 1043 (1993). They released Defendants from liability not only for the specific claims raised in their 2001 complaint, but also for any other claims they could have brought, as well as any "future" claims "which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of the Accident ... ***including, without limitation, any and all known or unknown claims*** ... which have resulted or may result from the Accident and any alleged acts or omissions of the Defendants." (Doc. 8–4 at 2–3.) ***The terms of the Release are not ambiguous, and the Court's consideration is thus confined to the plain meaning of the Release itself.*** *Skilstaf, Inc.,* 669 F.3d at 1017.

*Id.,* (emphasis supplied). The Ninth Circuit and federal bankruptcy courts are in accord. *See In re Shoot the Moon, LLC,* 635 B.R. at 575-576.

Accordingly, the Release at issue is enforceable and binding upon the Plaintiffs.

## II. CONCLUSION

Based upon the record in this case and the Shoot The Moon Bankruptcy case, the action and claims pursued by the Plaintiffs against FIB are derivative and exclusive to the Trustee, and the Plaintiffs have failed to meet their burden to establish otherwise. The Plaintiffs claims were fully and finally settled and approved by the U.S. Bankruptcy Court in the 2016 Settlement Order. Judgment should be entered in favor of FIB as a matter of law and the Plaintiffs' Complaint should be dismissed with prejudice.

DATED this 21st day of February 2023.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By: /s/ Sheila R. Schwager
Sheila R. Schwager
*Attorneys for Defendant First Interstate Bank*

DATED this 21st day of February 2023.

HANSBERRY & JOURDONNAIS, PLLC

By /s/ Jenny M. Jourdonnais
Jenny M. Jourdonnais
*Attorneys for Defendant First Interstate Bank*

CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on this 21st day of February, 2023, a copy of the foregoing First Interstate Bank's Opposition Memorandum to Plaintiffs' Brief was served by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and by mail on the following individuals and/or entities: None.

Sheila R. Schwager
HAWLEY TROXELL ENNIS & HAWLEY, LLP
Attorneys for Defendant, First Interstate Bank