Tarum Law Office P.C.
Randy L. Tarum
417 Central Avenue, Ste. 401
Great Falls MT 59401
Telephone (406) 268-0001
State Bar I.D. # 4548
e-mail: randy@tarumlaw.com

Attorney for Plaintiffs

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MONTANA

| | |
|---|---|
| In Re | ) |
| SHOOT THE MOON, LLC | ) Case No. 2:15-bk-60979-WLH |
| | ) |
| Debtor. | ) |
| | ) |
| JERRY HALL and JAN HALL, | ) Adv. Proceeding No.2:22-ap-02009-WLH |
| | ) |
| Plaintiffs. | ) |
| | ) |
| v. | ) |
| | ) |
| FIRST INTERSTATE BANK, a | ) |
| Montana banking corporation and | ) |
| DOES 1-10, Defendants. | ) |

## STATEMENT OF GENUINE ISSUES

1. On August 16, 2022 the HALLS filed an Amended Complaint. See Affidavit of Jerry Hall.

2. The HALLS Amended Complaint asserts state law claims against FIB including Counts (3) Civil and Criminal Conspiracy; (4) Negligence-Professional Negligence-Banking Malpractice; (5) Aiding and Abetting Fraud; (6) Unjust Enrichment; (7) Breach of the Implied Covenant of Good Faith and Fair Dealing. See Affidavit of Jerry Hall.

3. The Amended Complaint is the live complaint and is substantially different from the to the HALLS' original Complaint. See Affidavit of Jerry Hall.

4. The HALLS provided loans totaling $1,100,000 to Hatzenbeller through Shoot the Moon III, LLC.

   a. October 18, 2013 loan of $100,000;
   b. December 26, 2013 loan of $25,000;
   c. March 14, loan of $50,000;
   d. April 4, 2014 loan of $100,000;
   e. June 4, 2014 loan of $50,000;
   f. July 24, 2014 loan of $50,000;
   g. September 12, 2014 loan of $50,000;
   h. November 7, 2014 loan of $50,000;
   i. January 16, 2015 loan of $75,000;
   j. January 29, 2015 loan of $150,000;
   k. February 21, 2015 loan of $50,000;
   l. March 13, 2015 loan of $50,000;
   m. April 17, 2015 loan of $50,000;
   n. May 15, 2015 loan of $50,000;
   o. June 26, 2015 loan of $50,000;
   p. July 24, 2015 loan of $50,000;
   q. September 4, 2015 loan of $50,000;
   r. September 17, 2015 loan of $50,000;

See Affidavit of Jerry Hall.

5. The HALLS checks to Hatzenbeller's Shoot the Moon were all deposited at Prairie Mountain Bank. See Affidavit of Jerry Hall.

6. FIB knew of Hatzenbeller's check kiting scheme as early as 2010. See Affidavit of Jerry Hall and Exhibit 1 to the Amended Complaint.

7. FIB had taken notice of the frequency of large checks being drawn on Prairie Mountain Bank, along with other financial institutions, to cover negative balances on accounts held at FIB. See Affidavit of Jerry Hall and Exhibit 1 to the Amended Complaint.

8. On August 23, 2010, Bill Weber ("Weber"), President of FIB's Great Falls main branch, wrote to Hatzenbeller in relevant part:

> Ken, as you are aware, a check you deposited in the amount of $25,000 drawn on US Bank was returned NSF today. This is why our bank has been concerned with deposits you make with checks drawn on PMI Bank. We have discussed the issues that arise when you write checks between various financial institutions and deposit into your accounts with First Interstate Bank and as well as the reverse. Because of this we are now required to have guaranteed funds when depositing a check drawn on another financial institution from Shoot the Moon.
> Exhibit "1".

See Affidavit of Jerry Hall and Exhibit 1 to the Amended Complaint.

9. On August 23, 2010, Bill Weber ("Weber"), President of FIB's Great Falls main branch, knew that Hatzenbeller was writing large NSF checks and depositing them at FIB. Despite this Knowledge, FIB continued to allow the check kiting scheme to continue for years without taking any action to stop it. See Affidavit of Jerry Hall and Exhibits 1-12 to the Amended Complaint.

10. On August 2, 2011, in response to concerns about Hatzenbeller depositing checks from Prairie Mountain Bank with FIB that were NSF, FIB entered into an agreement with Prairie Mountain Bank whereby Prairie Mountain Bank would guarantee up to $200,000.00 per day in funds drawn on STM accounts held at Prairie Mountain Bank and deposited at FIB. See Affidavit of Jerry Hall and Exhibit 12 to the Amended Complaint.

11. FIB received numerous deposits from several of Hatzenbeller's Shoot the Moon entities that had accounts at Prairie Mountain Bank. See Affidavit of Jerry Hall and Exhibit 12 to the Amended Complaint.

12. On May 10, 2012, Ted Lewis ("Lewis"), FIB's Vice President of Commercial

Lending for Great Falls, wrote to Hatzenbeller in relevant part:

> While the ledger balances were a strong positive $243K last night we would like to see the available balances remain positive as well. That may occur tomorrow looking at the memo available column below if the checks coming through today are light. Also if you are not going to be depositing large checks from Prairie Mountain Bank the float (difference between ledger and available balances) will reduce significantly.
> Exhibit "2".

See Affidavit of Jerry Hall and Exhibit 2 to the Amended Complaint.

13. On May 10, 2012, Ted Lewis ("Lewis"), FIB's Vice President of Commercial Lending for Great Falls discussed how Hatzenbeller may reduce the float involving large checks from Prairie Mountain Bank. See Affidavit of Jerry Hall and Exhibit 2 to the Amended Complaint.

14. On July 6, 2012, Ted Lewis, FIB's Vice President of Commercial Lending for Great Falls again raised his concerns regarding overdrafts with the members of Shoot the Moon, writing in part:

> Last July when we met to modify many of Shoot the Moon's loans I discussed the bank's ongoing concerns regarding the companies' working capital position. I mentioned that the checking accounts held at First Interstate Bank often times carried significant negative balances during the business day (referred to as daylight overdrafts) which are covered at the end of the business day with checks drawn on other financial institutions. The deposited checks take a day or so to collect through the Federal Reserve System which leaves the company's accounts with negative collected balances on a regular basis.
> Exhibit "3".

See Affidavit of Jerry Hall and Exhibit 3 to the Amended Complaint.

15. On July 6, 2012, FIB knew that Hatzenbeller was continuing with his check kiting scheme. See Affidavit of Jerry Hall and Exhibit 3 to the Amended Complaint.

16. Instead of taking action to stop Hatzenbeller's fraudulent scheme, FIB took steps to protect itself from financial loss should the kiting scheme stop while significant checks had been drawn on FIB accounts. See Affidavit of Jerry Hall and Exhibit 4 to the Amended Complaint.

17. It became clear that FIB was working in concert with Prairie Mountain Bank and Hatzenbeller in the check floating scheme. Instead of taking action to stop Hatzenbeller's fraudulent scheme, FIB worked with Hatzenbeller and took steps to protect itself from financial loss should the kiting scheme stop while significant checks had been drawn on FIB accounts. To protect itself, FIB implemented a policy in which it would only allow Hatzenbeller to deposit checks from other financial institutions into FIB accounts but would not allow Hatzenbeller to write checks on those accounts to any Shoot the Moon-affiliated company or other financial institution. See Affidavit of Jerry Hall and Exhibit 4 to the Amended Complaint.

18. The policy that FIB implemented to protect itself was communicated by Ted Lewis, FIB's Vice President of Commercial Lending for Great Falls in a July 13, 2012, email between Lewis and Hatzenbeller. The email provided in relevant part:

> First Interstate Bank has agreed to your request to continue allowing checks drawn on Shoot the Moon and affiliated company accounts at other financial institutions to be deposited in First Interstate accounts provided that the companies permanently cease writing checks drawn on any First Interstate Bank accounts to Shoot the Moon and affiliated companies for deposit at other institutions.

See Affidavit of Jerry Hall and Exhibit 4 to the Amended Complaint.

19. Hatzenbeller continued the check kiting scheme, which raised the concerns of FIB's own Security Department. On August 15, 2013, Lewis wrote to Hatzenbeller, in relevant part:

> [W]e received the attached analysis of checking account activity from our Security Department today and it appears that checks are once again being written on STM's FIB accounts and being deposited at Prairie Mountain Bank. Is our analysis incorrect, or have STM checks drawn on FIB again been deposited on STM accounts at Prairie Mountain? Please respond with an explanation and if the activity did occur, and if so please cease this activity immediately and resume compliance with our previous agreement.

See Affidavit of Jerry Hall and Exhibit 5 to the Amended Complaint.

20. In an attempt to further protect itself from the risk of loss from the collapse of the check kiting scheme, FIB implemented additional restrictions on Hatzenbeller's use of accounts located at FIB. See Affidavit of Jerry Hall and Exhibit 6 to the Amended Complaint.

21. The additional restrictions that were implemented by FIB only protected FIB's financial interests, while leaving other financial institutions and Plaintiffs exposed to significant financial harm. See Affidavit of Jerry Hall and Exhibit 6 to the Amended Complaint.

22. On October 2, 2013, Lewis wrote to Conner, as well as the other members, to communicate FIB's continued concerns and the implementation of additional restrictions. The email provides in relevant part:

> During a recent review of Shoot the Moon's accounts it was noted that the deposit accounts are showing higher levels of uncollected funds and

> that checks are being written to owners for deposit at other financial institutions. …
>
> Also, because of our continued concerns with the high levels of uncollected funds in the companies' deposit accounts we will begin placing holds on deposited items to the accounts that are drawn on related parties' accounts at other financial institutions. The availability of funds on checks deposited may be delayed as permitted by law until we can verify that the checks have cleared the account on which they are drawn.
>
> If we feel it necessary, we reserve the right to disallow withdrawals for a longer period of time on any particular item. We will notify you if we do this, and tell you when you will be able to withdraw the funds at the time of deposit.
>
> See Affidavit of Jerry Hall and Exhibit 6 to the Amended Complaint.

23. The reasoning for restrictions implemented by FIB was explained in a February 13, 2013 email from Ted Lewis, FIB's Vice President of Commercial Lending for Great Falls to Hatzenbeller, stating in relevant part:

> The intent is to stop the potential for checks related to STM that are drawn on FIB that could, in turn fund other bank's checks, that are then deposited back into FIB accounts.
>
> See Affidavit of Jerry Hall and Exhibit 7 to the Amended Complaint.

24. More than four years after first having knowledge of Hatzenbeller's check kiting scheme, FIB continued to allow Hatzenbeller to kite checks at FIB without taking any action to stop it. See Affidavit of Jerry Hall and Exhibit 7 to the Amended Complaint.

25. On September 22, 2014, Ted Lewis, FIB's Vice President of Commercial Lending for Great Falls sent an email confirming that FIB was aware of and participating in Hatzenbellers ongoing check kiting scheme. See Affidavit of Jerry Hall and Exhibit 8 to

the Amended Complaint.

26. On September 22, 2014, Lewis wrote to Hatzenbeller in relevant part:

> The overdrafts are very high again at $790k. This has to get fixed, any word on the check? I know that you are in Helena but please send me some confirmation or documentation that the funds are on the way so that I can justify paying the overdrafts again.

See Affidavit of Jerry Hall and Exhibit 8 to the Amended Complaint.

27. In addition to having actual knowledge of Hatzenbeller's illegal activities, FIB actively and intentionally participated in aiding and abetting Hatzenbeller carry out the fraudulent scheme. See Affidavit of Jerry Hall and Exhibit 9 to the Amended Complaint.

28. When FIB's internal controls detected red flags of fraudulent activity, FIB's officers misled FIB auditors with false assurances the officers characterized as "bs". FIB officers provided instruction and guidance directly to Hatzenbeller on how to avoid detection as evidenced in a February 9, 2012 email from Lewis to Hatzenbeller. The email provides in part:

> I just finished my first round of examiner interrogations on Shoot the Moon. They noted the large daylight overdrafts and I said that Ken always covers them, and that you watch over the accounts balance late into the night. <u>Not sure how my bs is working, we will see on Friday when they leave</u>. Thank you for keeping the payments within the 10 day grace period!!! It is huge for us with these boys breathing on the rampage.

See Affidavit of Jerry Hall and Exhibit 9 to the Amended Complaint.

29. FIB's officers knew that Hatzenbeller's failure to deposit even a single check could cause the fraudulent scheme to unravel. To ensure that the check kiting scheme was not

revealed, FIB's officers and employees sent constant reminders to Hatzenbeller of the amount of the overdrafts that needed to be covered. See Affidavit of Jerry Hall and Exhibits 8,9,10 and 11 to the Amended Complaint.

30. In a May 12, 2014 email to Hatzenbeller, Lewis sent a reminder to Hatzenbeller that he needed to cover the unlawful float to avoid detection. Lewis sent the following email:

> I am off today but need to get your overdrafts covered by 9:45 so items to Prairie Mountain won't get returned. I believe the amounts are $43k in one account and $64k in another after this mornings (sic) presentments. Please confirm these amounts and your plan to cover the items with Kevin Johnson[.]

See Affidavit of Jerry Hall and Exhibit 10 to the Amended Complaint.

31. On July 21, 2014, Lewis' concerns that a missed payment would lead to the collapse of the fraudulent scheme led him to write to Hazenbeller:

> Just a heads up, Kevin Johnson is on vacation this week and I will be off until next Monday starting Tuesday afternoon. This may pose a problem processing overdrafts if they are not covered today as promised. Please let me know if there are any problems funding the last loans as soon as possible.

See Affidavit of Jerry Hall and Exhibit 11 to the Amended Complaint.

32. The first indication that FIB was engaged in a conspiracy with FIB concerning unlawfully floating checks was August 23, 2010. See Affidavit of Jerry Hall and Exhibit 1 to the Amended Complaint.

33. The conspiracy between FIB, Prairie Mountain Bank and Hatzenbeller was in progress at the time the HALLS made their first loan to Hatzenbeller's STM on October 18, 2013, which was deposited into an STM account at Prairie Mountain Bank. See Affidavit of Jerry Hall.

Page 9 of 12

2:22-ap-02009-WLH    Doc#: 36-2    Filed: 02/21/23    Page 9 of 12

34. The HALLS were never made aware if FIB ever withdrew from the conspiracy with Hatzenbeller and Prairie Mountain Bank. See Affidavit of Jerry Hall.

35. There is no evidence that FIB withdrew from the conspiracy prior to the HALLS last investment with Hatzenbeller on September 17, 2015. See Affidavit of Jerry Hall.

36. Ken Hatzenbeller used his relationship with co-conspirators FIB and Prairie Mountain Bank as an assurance to the HALLS that their investments were safe. See Affidavit of Jerry Hall.

37. The HALLS Amended Complaint seeks damages of unjust enrichment and economic losses due to FIB's conduct in the conspiracy and the direct claims of negligence and Breach of the Implied Covenant of good faith and fair Dealing and Bad Faith not based upon any theory involving the deepening insolvency of the bankrupt estate. See Affidavit of Jerry Hall and the Amended Complaint.

38. On November 13, 2021, I learned of the conspiracy between Hatzenbeller, FIB and Prairie Mountain Bank when I received and read a copy of the emails which are attached to the Amended Complaint as Exhibits 1-12.

39. Defendant, FIRST INTERSTATE BANK, ("FIB"), at all times relevant to this Complaint, a Montanan banking corporation, with its principal place of business located in Billings, Montanan. FIB is a publically traded corporation and was at all times pertinent herein doing business in Great Falls, Cascade County, Montana. Admitted by FIB in its Answer to Amended Complaint ¶ 2.

40. Kenneth Hatzenbeller ("Hatzenbeller") was the managing member of Shoot the Moon III, LLC and the other 19 other entities he created between 2006 to 2015 for the purpose of acquiring and operating restaurants in Montana, Washington, and Idaho. The restaurants included Chili's Bar & Grills, On the Borders, and Sonic Drive-Ins, as well as several independent restaurants. Admitted by FIB in its Answer to Amended Complaint ¶ 4.

41. Hatzenbeller and some Shoot the Moon entities banked with FIB for a period of time. Admitted by FIB in its Answer to Amended Complaint ¶ 5.

42. The HALLS began banking with Mountain West Bank on October 19, 2001. Admitted by FIB in its Answer to Amended Complaint ¶ 6.

43. The HALLS Mountain West bank accounts were converted to FIB on October 17, 2014 upon FIB's merger with Mountain West Bank. Admitted by FIB in its Answer to Amended Complaint ¶ 6 and 7.

44. FIB provided significant financing to Hatzenbeller through his different entities. The loans provided by FIB included the following:

   a. A May 3, 2006 loan of $1,875,000.00 (Loan # 12050);

   b. A September 29, 2006 loan of $300,000.00 (Loan # 12285);

   c. A March 27, 2007 loan of $1,220,000.00 (Loan # 12665);

   d. A June 23, 2008 loan of $6,812,500.00 (Loan # 13715);

   e. A July 30, 2008 loan of $5,380,000.00 (Loan # 13780); and

   f. A February 8, 2010 loan of $329,255.39. (Loan # 14465).

Admitted by FIB in its Answer to Amended Complaint ¶ 9.

45. Hatzenbeller's business entities merged into the single entity, Shoot the Moon, LLC, and filed for Chapter 11 bankruptcy in 2015. Admitted by FIB in its Answer to Amended Complaint ¶ 15.

46. In 2017, Hatzenbeller was sentenced to 30 months in federal prison for bank fraud. Admitted by FIB in its Answer to Amended Complaint ¶ 15.

47. FIB raised concerns with Hatzenbeller about NSF checks in an August 23, 2010 email. See Exhibit 1 attached to Plaintiff's Amended Complaint. Admitted by FIB in its Answer to Amended Complaint ¶ 15.

48. At the time shoot the moon filed bankruptcy FIB was owed approximately $13,259,528.03. See FIB Answer to Amended Complaint ¶ 11 and 35.

DATED this 21st day of February, 2023.

                              Tarum Law Office P.C.
                              By: /s/Randy Tarum

                              Randy Tarum

**CERTIFICATE OF MAILING**

I hereby certify under penalty of perjury that the foregoing was duly served, by ECF on Jenny Jourdonnais and Sheila R. Schwager, counsel for FIB.

DATED this 21st day of February, 2023.

                              /s/ Randy L. Tarum